UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

GLEN R. JEFFERY,

Plaintiff,

v. Case No. 26-cv-870-pp

BRADLEY FEDIE, *et al.*,

Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Glen R. Jeffery, who is incarcerated at the Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 3, and screens his complaint, dkt. no. 1.

## I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On May 27, 2026, the court ordered the plaintiff to pay an initial partial filing fee of $0.43. Dkt. No. 6. The court received that fee on June 16, 2026. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). “A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter C’nty Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. C’nty of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff’s Allegations

The plaintiff was incarcerated at the Wisconsin Secure Program Facility during the events described in the complaint. Dkt. No. 1 at ¶3. He is suing Captains Bradley Fedie and Dane Esser, Sergeants Juily Payne and Eiman, Officers Jake Laxton and Floyd Webster, Dr. Gina DeGiovanni, Dr. Mark Ledesma, Nurses Nichole Parr, Gunner Lee and Shanta Anderson and the Injured Patients and Families Compensation Fund. Id. at 1-2.

The plaintiff alleges that in March 2024, he inserted several pens and pieces of metal into his penis and “fish hooked them into the meat of his urethral lining[.]” Id. at ¶5. He states that he was then placed in a holding cell,

after which he "stuffed the final pen into his urethra stuffing his urethra lining to being stretched past its normancy [sic] making it so that plaintiff could not urinate past it." Id. at ¶6. The plaintiff allegedly did this because he was suicidal after a long-awaited urology appointment had been canceled. Id. He asserts that all staff members walked off except for defendant Laxton who spoke with the plaintiff at his cell. Id.

The plaintiff alleges that eventually defendants Parr and Lee came to his cell front and told him that they would not send him to the emergency room and that Security Director Cirian (not a defendant) and defendant Esser decided that the plaintiff should remain in his cell until he removed the objects himself. Id. at ¶7. The plaintiff states that he told them he could not do that and they responded that he must stay in the cell and that defendant Dr. Ledesma said that he "could take the objects out [him]self if [he] put them in there, [he] might do minimum damage to [him]self, but it will be okay." Id. The plaintiff alleges that he then began to cut at his left inner elbow while defendant Eiman watched him. Id. at ¶8. Defendant Payne allegedly then came to the cell front with an "OC canister" and watched the plaintiff. Id. The plaintiff states that he said he was trying to cut out his vein so that he could get treatment. Id. The plaintiff says that he was left to suffer in pain and he then inserted the piece of metal that he was cutting with, but the officers did not try to stop him. Id. at ¶9.

The plaintiff alleges that defendants Parr, Lee, Esser, Fedie, Webster and Laxton told him that he would remain in the cell until he removed the objects

from his penis himself. Id. at ¶10. The plaintiff allegedly told them that he could not remove the items because they had pierced through his urethra wall and fish hooked. Id. at ¶11. Defendants Parr, Lee, Fedie and Esser then made the plaintiff expose his penis to them and try to rip out the items which was extremely painful and humiliating. Id. Defendant Nurse Parr, who is a female, allegedly ordered the plaintiff to open his urethra hole, pull it back and show them the inside after which defendants Lee, Esser and Fedie tried to remove the metal. Id. The plaintiff states that this further injured his urethra and it began to bleed. Id. at ¶12. Defendants Laxton, Webster, Eiman and Payne allegedly watched and did not intervene. Id. The plaintiff alleges that defendants Lee and Parr left and when they returned, they said that they had spoken again to defendant Dr. Ledesma who said that the plaintiff would "not get sent out to the emergency room (ER) under any circumstance, [he] is to remove the items [him]self, and push fluids, to drink plenty of water." Id. at ¶14.

The plaintiff alleges that at about 12:30 p.m., defendants Esser and Fedie told him that he would not be allowed to leave the cell until he "surgically remove[d] the embedded items out of [him]self, even against [his] protest that [he] could not." Id. at ¶15. The plaintiff states that after hours of not being able to remove the items on his own, defendant Dr. DeGiovanni came in and the plaintiff "was placed under duress to either allow her to remove the items without an X-ray or anesthetics or remain in the holding cell until they were removed." Id. at ¶16. Dr. DeGiovanni allegedly used "a needle nose pliers and

forcepts [sic] and began to tear away the inner lining of [the plaintiff's] urethra ripping the tissue off in little chunks, causing extreme pain without [the plaintiff's] consent." Id. The plaintiff states that he was in severe pain and that defendants Laxton, Webster and Nurse Anderson held him down. Id. Defendant Fedie allegedly told him that if he made any "adverted actions" he would taser the plaintiff, which forced the plaintiff to allow Dr. DeGiovanni and Nurse Anderson to torture his penis. Id. He says it was the worst pain he'd ever felt. Id.

The plaintiff alleges that later that day defendants Anderson and Lee conducted a bladder scan during which time he asked Anderson to assess the laceration on his arm. Id. at ¶17. Anderson allegedly initially said the wound was not serious but then she examined it more closely and determined that the wound was severe. Id. The plaintiff states that he was sent back to his cell in pain and not given any pain medication. Id.

The plaintiff claims that the defendants violated his rights under the Eighth Amendment to the United States Constitution and Wisconsin state law. Id. at ¶21. He seeks declaratory relief, injunctive relief, compensatory damages and punitive damages. Id. at ¶¶21-25.

C. Analysis

"The Eighth Amendment's ban on 'cruel and unusual punishments' obligates prison officials to provide medical care to prisoners in their custody." Sanders v. Moss, 153 F.4th 557, 567 (7th Cir. 2025) (quoting Dean v. Wexford Health Sources, Inc., 18 F.4th 214, 234 (7th Cir. 2021)); see also Estelle v.

Gamble, 429 U.S. 97, 102 (1976). A prison official's "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. Sanders, 153 F.4th at 567 (quoting Estelle, 429 U.S. at 104. The plaintiff must satisfy two prongs to prove a deliberate indifference claim. First, he must show that he suffers from an "objectively serious medical condition." Id. (quoting Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*)). The plaintiff also must establish that the prison official acted with a "sufficiently culpable state of mind." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)); see also Wilson v. Seiter, 501 U.S. 294, 297 (1991). "A prison official has a sufficiently culpable state of mind when the official 'knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk.'" Sanders, 153 F.4th at 568 (quoting Farmer, 511 U.S. at 834).

The plaintiff may proceed on an Eighth Amendment medical care claim against defendants Fedie, Esser, Payne, Eiman, Laxton, Webster, DeGiovanni, Ledesma, Parr, Lee and Anderson in their individual capacities based on allegations that they did not provide him with adequate medical care after he harmed himself by inserting pens and metal into his urethra and cutting his arm. The court will exercise supplemental jurisdiction over the plaintiff's state law negligence and medical malpractice claims. See 28 U.S.C. §1367(a).

The plaintiff sues the Injured Patients and Families Compensation Fund. The Fund exists only "to pay the portion of a medical malpractice claim in excess of the $1 million professional liability policy required for healthcare providers . . . under Chapter 655 [of the Wisconsin Statutes]." Earl v. Kinziger,

Case No. 20-cv-617, 2020 WL 7643230, at *1 (E.D. Wis. Dec. 23, 2020); see also Wis. Stat. §§655.23, 655.27(1). The plaintiff seeks compensatory and punitive damages. If he is successful on his state-law claims, his damage award could be over the $1 million threshold. The court will allow the plaintiff to proceed against the Fund on state-law medical malpractice claims.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$349.57** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at the Green Bay Correctional Institution, where the plaintiff is confined.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on

defendants Bradley Fedie, Dane Esser, Juily Payne, Sgt. Eiman, Jake Laxton, Floyd Webster, Gina DeGiovanni, Mark Ledesma, Nichole Parr, Gunner Lee, Shanta Anderson and Injured Patients and Families Compensation Fund. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 17th day of November, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**